**Oral Argument Scheduled February 5, 2026**
**No. 25-5209**

# In the United States Court of Appeals for the District of Columbia Circuit

MENNONITE CHURCH USA, *et al.*,

*Plaintiffs -Appellants*,

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants – Appellees*,

On Appeal from the United States District Court for the District of Columbia
Case No. 1:25-cv-00403-DLF, Honorable Dabney L. Friedrich, District Judge

**BRIEF OF *AMICUS CURIAE* FEDERATION FOR AMERICAN IMMIGRATION REFORM IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE OF THE DISTRICT COURT'S JUDGMENT**

CHRISTOPHER J. HAJEC
*Counsel of Record*
MATT A. CRAPO
DAVID L. JAROSLAV
*On the Brief*
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste 330
Washington, DC 20001
(202) 328-7004
chajec@fairus.org

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

# DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Federation for American Immigration Reform.

# TABLE OF CONTENTS

                                                  **Page**

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ................................................................................... ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ..................................................1

SUMMARY OF ARGUMENT ...................................................................................2

ARGUMENT ..............................................................................................................3

    I.  The district court correctly determined the Plaintiffs did not have standing, and so were unlikely to succeed on the merits. ................................................5

        a.  *The government has not substantially interfered with Plaintiffs' right to exercise their religious beliefs under the First Amendment* .......................6

        b.  *The Plaintiffs cannot succeed under RFRA* .................................................9

CONCLUSION .........................................................................................................12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ams. for Prosperity Found. v. Bonta*,
　594 U.S. 595 (2021) ........................................................................................... 6

*Boy Scouts of Am. v. Dale*,
　530 U.S. 640 (2000) ........................................................................................... 6

*Chaplaincy of Full Gospel Churches v. England*,
　454 F.3d 290 (D.C. Cir. 2006) ........................................................................... 5

*Emp. Div. v. Smith*,
　494 U.S. 872 (1990) ........................................................................................... 9

*Food & Water Watch, Inc. v. Vilsack*,
　808 F.3d 905 (D.C. Cir. 2015) ........................................................................... 5

*Henderson v. Kennedy*,
　253 F.3d 12 (D.C. Cir. 2001) ........................................................................... 10

*Lujan v. Def. of Wildlife*,
　504 U.S. 555 (1992) ..................................................................................... 8, 12

*Mennonite Church USA v. DHS*,
　778 F. Supp. 3d 1 (D.D.C. 2025) ....................................................................... 5

*Mills v. District of Columbia*,
　571 F.3d 1304 (D.C. Cir. 2009) ......................................................................... 5

*Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*,
　468 F.3d 826 (D.C. Cir. 2006) ......................................................................... 10

*Pheonix USH LLC v. Dist. DOT*,
　No. 25-7060, 2025 U.S. App. LEXIS 27975 (D.C. Cir. Oct. 24, 2025) ............. 5

*Presbyterian Church (U.S.A.) v. United States*,
　870 F.2d 518 (9th Cir. 1989) ............................................................................. 7

*Public Citizen, Inc. v. Nat'l Hwy. Traffic Safety Administration*,
 489 F.3d 1279 (D.C. Cir. 2007) ................................................................................7

*Sherley v. Sebelius*,
 644 F.3d 388 (D.C. Cir. 2011) ..................................................................................5

*Winter v. Natural Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) ................................................................................................5, 6

## STATUTES

Homeland Security Act of 2002,
 Pub. L. 107-296, 116 Stat. 2135 ...............................................................................9

Immigration and Nationality Act,
 Pub. L. 82-414, 66 Stat. 163 (1952) .........................................................................9

Religious Freedom Restoration Act,
 Pub. L. 103-141, 107 Stat. 1488 (1993) ...................................................................9

Secure Fence Act of 2006,
 Pub. L. 109-367, 120 Stat. 2638 .............................................................................11

# IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a non-profit 501(c)(3) public interest organization dedicated to informing the public about the effects of both unlawful and lawful immigration, and to defending in court the interests of Americans in limiting overall immigration, enhancing border security, and ending illegal immigration.

FAIR has been involved in more than 100 legal cases since 1980, either as a party or as *amicus curiae*. The decision in this case will likely have an impact on the ability of the executive branch of the federal government to identify and deal efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people in the United States. *Amicus* FAIR has direct and vital interests in defending the executive branch's ability to address the current illegal alien crisis.

FAIR is also the successor in interest to the Immigration Reform Law Institute (IRLI). Previously, IRLI was a supporting organization for FAIR, but in August 2025, IRLI merged into FAIR.[2] IRLI appeared as *amicus curiae* and filed

---

[1] All parties have consented to the filing of this brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

[2] *See* FAIR Press Release, "FAIR Expands Its Impact by Adding Litigation and Investigations Divisions: IRLI integration creates 'a unique opportunity,'" August 20, 2025, https://www.fairus.org/press-release/fair-irli-merger-litigation-and-investigations.

an *amicus* brief in the district court proceedings which are the subject of this appeal.

## SUMMARY OF ARGUMENT

One day after President Trump was inaugurated, Acting Secretary of Homeland Security Benjamin Huffman issued a memorandum entitled "Enforcement Actions in or Near Protected Areas." This memorandum rescinded a similar one issued in 2021 by former Secretary Mayorkas, which contained an exceedingly broad definition of protected areas that included healthcare facilities, schools, playgrounds, and graveyards.

The district court rightly denied Plaintiffs' request for a preliminary injunction preventing enforcement of the Huffman memorandum because Plaintiffs failed to establish that they are entitled to relief under either the First Amendment or the Religious Freedom Restoration Act (RFRA). Plaintiffs' claims are speculative at best, and, as the district properly held, they lack standing to bring them.

Plaintiffs' fears that armed immigration officers might invade their religious spaces, and their claims that sizes of their congregations have contracted and that they have not been able to welcome as many immigrants as they would like are insufficient both for standing and for establishing imminent, irreparable harm. Speculative injuries are insufficient. And, crucially, the district court properly

2

determined that Plaintiffs failed to show a causal relationship between their claimed injuries and the Huffman memorandum. The Trump administration campaigned on and has promised to greatly intensify efforts to remove illegal aliens. It cannot be concluded from the allegations in the complaint or the evidence submitted to support the preliminary injunction motion that Plaintiffs' claimed injuries are traceable to the Huffman memorandum specifically, rather than to these general increased enforcement efforts.

## ARGUMENT

In August of 2024, Karoline Leavitt, Donald Trump's campaign spokesperson, stated that "Trump will restore his effective immigration policies, implement brand new crackdowns that will send shockwaves to all the world's criminal smugglers, and marshal every federal and state power necessary to institute the largest deportation operation of illegal criminals… in American history."[3] Shortly after Trump's election, the media expressed concerns about the potential for the incoming administration to "kick off the detention and deportation of migrants at large scale."[4] Then, upon taking office, President Trump signed

---

[3] Kinsey Crowley, *Agenda47: Why Trump's immigration-reform proposals come with legal, feasibility concerns*, USA TODAY, Aug. 19, 2024, https://www.usatoday.com/story/news/politics/elections/2024/08/19/agenda47-20-promises-donald-trump-immigration-policies/74741280007/.

[4] Priscilla Alverez and Phil Mattingly, *Mass detention and returning migrants to Mexico: Donald Trump's plans on immigration are coming into focus*,

several immigration-related executive orders authorizing, among other things, the immediate removal of illegal aliens.⁵

To be sure, the rescission of former Secretary Mayorkas's protected-area policy and its replacement with the policy outlined in the Huffman memorandum did garner some media coverage, but nowhere near the avalanche heralding Trump's broader immigration and deportation policies.⁶ Plaintiffs' need to trace their purported injuries to a single obscure memorandum, instead of these broader policies publicized in a continuing flood of articles, op-eds, and news reports, is fatal.

---

CNN, Nov. 16, 2024, https://www.cnn.com/2024/11/16/politics/donald-trump-immigration-plans/.

⁵ *See, e.g.,* The White House, *Fact Sheet: President Donald J. Trump Protects the States and the American People by Closing the Border to Illegals via Proclamation*, January 22, 2025, https://www.whitehouse.gov/fact-sheets/2025/01/fact-sheet-president-donald-j-trump-protects-the-states-and-the-american-people-by-closing-the-border-to-illegals-via-proclamation/.

⁶ *See, e.g.,* Ximena Bustillo, Sergio Martinez-Beltran, *Trump administration strips schools, churches of immigration enforcement protections*, NPR, January 21, 2025, https://www.npr.org/2025/01/21/nx-s1-5269899/trump-immigration-enforcement-schools-churches; Camilo Montoya-Galvez, *Trump officials revoke Biden policy that barred ICE arrests near "sensitive locations" like schools and churches*, CBS NEWS, January 21, 2025, https://www.cbsnews.com/news/trump-immigration-ice-arrests-sensitive-locations/; Adam Shaw, Bill Melugin, *Trump DHS repeals key Mayorkas memo limiting ICE agents, orders parole review*, FOX NEWS, January 21, 2025, https://www.foxnews.com/politics/trump-dhs-repeals-key-mayorkas-memo-limiting-ice-agents-orders-review-parole-use?msockid=230397c9804965ad23f781a6814e644e.

## I. The district court correctly determined the Plaintiffs did not have standing, and so were unlikely to succeed on the merits.

A preliminary injunction is an extraordinary legal remedy that is only granted when the requesting party demonstrates a need for such relief. Among other factors, the parties seeking a preliminary injunction must establish a likelihood of success on the merits. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Pheonix USH LLC v. Dist. DOT*, 2025 U.S. App. LEXIS 27975 at *4 (D.C. Cir. October 24, 2025) ("This Court has reserved whether likelihood of success is a necessary showing or just one factor to be balanced") (citing *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011)). Failure to demonstrate even one of these factors, including likelihood of success, is a basis for denying a preliminary injunction. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006).

As the district court noted, "'likelihood of success encompass[es] not only substantive theories but also establishment of jurisdiction,' including standing to sue." *Mennonite Church USA v. DHS*, 778 F. Supp. 3d 1, 8 (D.D.C. 2025) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009)). The burden of proof rests with the movant, who must demonstrate a substantial likelihood of prevailing on the underlying claim, and that, absent the requested relief, the movant will suffer irreparable harm that is both imminent and not compensable through

monetary damages. *See Winter*, 555 U.S. at 22. Here, while the district court did not expressly separate and rule distinctly on each claim, Plaintiffs failed to establish likelihood of success on the merits (both substantively and regarding standing) on both their constitutional (First Amendment Free Exercise) and statutory (RFRA) claims.

> a. *The government has not substantially interfered with Plaintiffs' right to exercise their religious beliefs under the First Amendment.*

To prevail in a claim under the Free Exercise Clause of the First Amendment, a party must first demonstrate that a government action either compels the party to act in a manner contrary to its sincerely held religious beliefs or otherwise significantly interferes with its religious practices. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 653 (2000). This means that the challenged government action must significantly burden the plaintiff's ability to practice its religious beliefs. *See id.* at 653; *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618-19 (2021).

Plaintiffs did not and cannot satisfy their burden, because they have not shown that DHS's policy change forces Plaintiffs to alter their religious beliefs or practices, nor that it significantly interferes with their ability to worship. Plaintiffs argue that DHS's policy of allowing enforcement activity at or near protected areas interferes with their religious rights by deterring attendance at worship, ministry, and other communal events. JA at 29. Specifically, they allege two kinds of injury

caused by DHS's policy change. First, they claim that the policy change "will constitute an immediate disruption to Plaintiffs' association for the purpose of religious exercise, assembly, and expression of religious belief." *Id.* at 96. Second, they claim that the threat of enforcement in protected areas will lead to a decline in attendance among congregants, which will "prevent Plaintiffs … from engaging in communal worship with all members of their community," including illegal aliens. *Id.* at 93.

In support of the former claim, Plaintiffs do not cite any actual disruption to worship or church activities caused by DHS activities since the Huffman memorandum was issued. The mere issuance of the memorandum is not enough to show such disruption because it does not direct DHS to engage in any particular activities at protected areas, but merely grants agents greater discretion than that allowed by the Mayorkas memorandum. Plaintiffs' reliance on *Presbyterian Church (U.S.A) v. United States*, 870 F.2d 518 (9th Cir. 1989), is inapposite: in that case, immigration officials were shown to have engaged in actual surveillance of churches, but no such surveillance is even alleged here. *See id.* Plaintiffs have merely speculated that greater discretion will lead to interference with their religious exercise by DHS, including surveillance, but have provided no further basis for that claim of injury. *See, e.g.*, JA at 75, 79. *See Public Citizen, Inc. v. Nat'l Hwy. Traffic Safety Administration*, 489 F.3d 1279, 1293-1294 (D.C. Cir.

7

2007) (holding that mere speculation is not enough to establish that plaintiffs are likely to succeed in showing imminent harm).

As for the latter claim of injury, Plaintiffs again fail to establish causation between DHS's change in policy and the burden Plaintiffs allege they will suffer. Concurrently with that change of policy, DHS has announced, to much publicity, that it will enforce immigration laws much more aggressively than before, and Plaintiffs fail to show that this general increase in enforcement will not account for the asserted reduction in attendance at their services. After all, if an illegal alien congregant is detained by DHS at a public place or a traffic stop and then deported, the same reduction of attendees will take place—there will be one less congregant at a given religious service or church activity. Also, if illegal aliens will indeed be frightened away from attending Plaintiffs' religious services or activities, Plaintiffs have not shown that their fear will be caused by Defendants' policy modification, rather than, as seems more likely, more vigorous enforcement generally. The district court correctly concluded that this alleged harm is not "fairly traceable" to the challenged policy revisions. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992).

In any event, even assuming *arguendo* that DHS's revised policies burdened Plaintiffs' exercise, a neutral, generally applicable law that burdens religion is subject only to rational basis review, unless it also infringes on another

constitutional right or targets religion specifically. *See Emp. Div. v. Smith*, 494 U.S. 872 (1990). The Free Exercise Clause protects religious liberty but does not provide absolute immunity from generally applicable laws, particularly those enacted to promote public safety and welfare. *See id.* DHS's policy change is neutral and generally applicable. It facilitates the execution of DHS's statutory responsibility to enforce immigration laws, including the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (codified as 6 U.S.C. § 101 *et seq.*), and the Immigration and Nationality Act, Pub. L. 82-414, 66 Stat. 163 (1952) (codified throughout Title 8 U.S.C.), which are themselves neutral, generally applicable laws enacted to promote public safety and welfare.

    b. *The Plaintiffs cannot succeed under RFRA.*

Plaintiffs' claim under the Religious Freedom Restoration Act ("RFRA"), Pub. L. 103-141, 107 Stat. 1488 (1993) (codified as 42 U.S.C. ch. 21B § 2000bb et seq.), also fails. To support this claim, Plaintiffs argue that the DHS policy change burdens their expressive association by allowing enforcement action that would endanger the security, communal worship, and social services provided at Plaintiffs' churches and synagogues. JA at 96. In particular, Plaintiffs blame DHS's policy change for forcing their congregations to take actions such as "heightening security, locking doors, moving services online, and being less public about their immigrant-focused ministries." *Id.* at 94. But such measures to aid others in

9

evading the law are not a cognizable injury. *See Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826 (D.C. Cir. 2006) (stating this circuit's consistent position that self-inflicted harm does not amount to a cognizable injury); *Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001) (holding that a generally applicable prohibition did not force plaintiffs to engage in conduct forbidden by their religion).

Nor can Plaintiffs establish that the DHS policy change provides a basis to fear attending religious community activities among U.S.-citizen and lawful-immigrant congregants. An individual's subjective fears of encountering DHS do not mean that DHS, by enforcing its statutory obligations, is somehow deterring that individual from attending a religious service. DHS cannot be held responsible for the subjective fears of persons whom the agency does not seek to detain. Plaintiffs cite one incident in which a Milwaukee family was detained by immigration officers after speaking Spanish at a shopping mall and later released after the detention had been determined accidental. JA at 57. But this accidental arrest occurred at a shopping mall, not a place of worship or any other area deemed "protected" in the Mayorkas memorandum, which shows that it did not follow from the policy change. In any event, if the possibility of accidental arrests could

10

be a basis for imminent harm, it could be used to show such harm in challenges to all immigration laws, and indeed all criminal laws, as well.

With respect to illegal aliens, Plaintiffs cannot show that their predicted absence from services will be caused by DHS's modification of the protected areas policy rather than by more vigorous enforcement generally. They thus cannot show that this modification burdens their religious exercise. And, of course, vigorous immigration law enforcement generally, including perfectly effective enforcement, could not be challenged under RFRA, because it would be the least restrictive means of serving the compelling governmental interest in achieving operational control of the border, defined by Congress as "the prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." Secure Fence Act of 2006, Pub. L. 109-367, 120 Stat. 2638.; 42 U.S.C. § 2000bb-1(a), (b).

In short, if illegal aliens will be frightened away from Plaintiffs' religious services or activities, it is vastly more likely to be because the Trump administration's general, highly-publicized ramping-up of immigration enforcement gives rise to a general fear of going out in public unnecessarily, whether to church, shopping malls, or other public areas, rather than because an obscure agency memorandum about the level of enforcement in a wide range of "protected areas" has been modified. Because Plaintiffs failed to show the contrary,

the district court properly determined that the modifications do not burden Plaintiffs' religious exercise, that the alleged injury is not "fairly traceable" to the modification, and that the Plaintiffs were unlikely to succeed on the merits. *Lujan*, 504 U.S. 555, 560-61.

## CONCLUSION

For the foregoing reasons the judgment of the district court should be affirmed.

Date: December 19, 2025

Respectfully submitted,

/s/ Christopher J. Hajec
CHRISTOPHER J. HAJEC, D.C. Bar No. 492551
*Counsel of Record*
MATT A. CRAPO, D.C. Bar No. 473355
DAVID L. JAROSLAV, D.C. Bar No. 90021286
*On the Brief*
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste. 330
Washington, DC 20001
(202) 328-7004
chajec@fairus.org
mcrapo@fairus.org
djaroslav@fairus.org

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

# CERTIFICATE OF COMPLIANCE

The foregoing brief complies with Fed. R. App. P. 27(d)(2) because it contains 2,545 words, as measured by Microsoft Word software. The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

Date: December 19, 2025  Respectfully submitted,
 /s/ Christopher J. Hajec

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of December 2025, I electronically filed the foregoing *amicus* brief with the Clerk of the Court using the CM/ECF system, which I understand to have caused service of the parties' counsel.

<u>s/ Christopher Hajec</u>